546 So.2d 1347 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Whitney SEGURA, Defendant-Appellant.
No. CR88-1304.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*1348 Kim M. Kidd, St. Martinville, for defendant-appellant.
J. Scott Decuir, Asst. Dist. Atty., New Iberia, for plaintiff-appellee.
Before GUIDRY, FORET and DOUCET, JJ.
DOUCET, Judge.
Defendant, Whitney Segura, was charged by bill of information with the crime of possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966(A)(1). On July 19, 1988, defendant was tried before a jury of twelve, which found him guilty as charged by a vote of ten to two. On August 23, 1988, the trial judge sentenced defendant to 25 years of imprisonment at hard labor. Defendant now appeals his conviction and sentence based on four assignments of error, only two of which are argued in his brief to this court.
FACTS
On the morning of March 11, 1988, Narcotics Agent Steven Menard of the Iberia Parish Sheriff's Office received information from a confidential informant by way of a phone call from the informant and an interview with the informant. The informant told Agent Menard that defendant was transporting marijuana in his car to sell to an individual who worked at Iberia Poultry.
At about 9:00 a.m. that same morning, Lieutenant Claude Hills of the New Iberia Police Department, who was assigned to the City-Parish Narcotics Task Force, noticed defendant and another white male in defendant's car stopped at a stop sign. As Hills approached defendant on the intersecting street, he noticed that defendant had ample time to either cross the intersection or turn prior to Hills reaching the intersection, but instead waited for Hills to pass through the intersection. Hills slowed down as he passed through the intersection and made direct eye contact with defendant. Hills stated that he had known defendant for about 10 years, and that defendant knew he was a narcotics officer. After Hills passed through the intersection, defendant waited until Hills reached the next intersection before proceeding. Hills stated that defendant remained stopped at the intersection for about two minutes and that this was unusual since there was no traffic in the area other than Hills' car and defendant's car.
Hills then proceeded to Narcotics Headquarters where he discussed with Agent Menard the information received from the confidential informant. Menard and Hills, along with Narcotics Agent Bill Bonin and Detective Kerry LeBlanc of the Narcotics Task Force, agreed to set up surveillance *1349 at Iberia Poultry. Defendant's car drove through the surveillance area and Menard and Bonin began following defendant. Defendant apparently spotted the officers and began to speed up. Menard activated the emergency lights on his vehicle and a high-speed chase ensued. A marked police car blocked the street on which both vehicles were traveling. Defendant made an evasive move around the police car and the high-speed chase continued.
Mrs. Doris Wellbrock saw the two vehicles through her window as they passed her house. As the car being driven by defendant turned the corner adjacent to her house, she saw the passenger throw a brown paper bag out of the car window. She immediately went outside and picked up the bag. As she picked up the bag, she noticed her neighbor, Mr. Henry Adams, standing in his yard. Mr. Adams had also seen the high-speed chase pass his house. Mrs. Wellbrock called Mr. Adams to come over and showed the bag to him. Both looked briefly into the paper bag and saw that it contained plastic bags and what appeared to be marijuana. Mr. Adams volunteered to take the bag and its contents to the police who, by this time, had stopped defendant about a block from Mr. Adams' house. Mr. Adams took the bag to where the police were and gave it to Detective LeBlanc, who transported it to the Narcotics Department. Chemical analysis of the contents of the bag revealed that the bag contained 247 grams of marijuana packed in five plastic bags.
Defendant and his passenger, James Lomax, were arrested, transported to Narcotics Headquarters, read their rights, and interrogated. Defendant signed a form titled "Statement of Rights" on which he indicated that he understood his rights, that he was willing to answer questions without a lawyer, and that he received no threat, promise, or inducement to answer questions or give up any of his rights.
Detective LeBlanc, Agent Menard, and Lieutenant Hills all testified that they were present when defendant was interrogated. All testified that defendant stated he had received a phone call in reference to selling marijuana at Iberia Poultry. They stated that defendant admitted that the marijuana found was his and that he had received it from Lomax earlier that day. They further stated that defendant admitted that he and Lomax were bringing the marijuana to Iberia Poultry to sell it.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant asserts that the trial court erred in that the evidence viewed in a light most favorable to the prosecution is not sufficient to convict the defendant of the crime of possession of marijuana with intent to distribute.
When reviewing the sufficiency of evidence to support a conviction, an appellate court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant to have committed the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Chism, 436 So.2d 464 (La.1983); State v. Cargille, 507 So.2d 1254 (La.App. 3rd Cir.), writ denied, 512 So.2d 1175 (La.1987). Under LSA-R.S. 40:966(A)(1), there are two essential elements that the state must prove in order to support a conviction for possession of marijuana with intent to distribute: (1) possession; and (2) intent to distribute. State v. House, 325 So.2d 222 (La.1975).
First, defendant asserts that the state failed to prove that he had possession of the marijuana. Only one of the state's witnesses testified that she saw the bag of marijuana thrown from the defendant's car. She testified that the marijuana was thrown out of the car window by the passenger, James Lomax, not the defendant who was driving. Furthermore, the police had information that Lomax was the one who had brought the marijuana into the parish. No one testified that the defendant was in actual possession of the marijuana.
*1350 The prosecution is not required to show actual possession in order to convict, but need only show that the defendant exercised dominion or control over the illegal substance. State v. Edwards, 354 So.2d 1322 (La.1978); State v. Norman, 434 So.2d 1291 (La.App. 3rd Cir.1983). A person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willingly and knowingly shares with the other the right to control it. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). One need not exercise actual control or dominion in order to have constructive possession. All that is required is to have a direct right and ability to exercise control. State v. Johnson, 513 So.2d 832 (La.App. 2nd Cir.1987), writ denied, 519 So.2d 124 (La.1988). Guilty knowledge is an essential ingredient of unlawful possession of an illegal drug. State v. Trahan, supra, at 1226; State v. Smith, supra, at 329.
The testimony of Mrs. Wellbrock placed the marijuana in the car driven by the defendant. After the defendant was arrested, he gave a statement. Three officers testified that the defendant admitted that he received the marijuana from James Lomax. Furthermore, the officers testified that the defendant stated that he and Lomax were heading to Iberia Poultry to sell the marijuana. Thus, the defendant knowingly exercised, or had a direct right and ability to exercise control over the marijuana. As stated above, this is all that is needed to prove constructive possession of the marijuana.
The intent to distribute is the second element of which the state must supply evidence in order to convict. State v. Willis, 325 So.2d 227 (La.1976). The intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981); State v. Williams, 457 So.2d 902 (La.App. 3rd Cir. 1984), writ denied, 461 So.2d 313 (La.1984). In State v. House, supra, the court enumerated several factors from which the intent to distribute may be inferred. Those factors include evidence:
(1) that the defendant ever distributed or attempted to distribute any marijuana;
(2) that the marijuana was in a form usually associated with marijuana possessed for distribution to others;
(3) that the amount was such as to create a presumption of intent to distribute;
(4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and
(5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
The defendant asserts that the state failed to present evidence of any of these factors. Contrary to defendant's assertion, we find that the state did present evidence of several of these factors from which defendant's intent to distribute marijuana may be inferred.
In his statement to police after his arrest, defendant admitted that he was on his way to sell the marijuana just prior to his arrest. Also, testimony at trial showed that the marijuana was packaged in five plastic bags, two larger ones and three smaller ones, and that one of these bags contained another empty plastic bag. A witness accepted by the court as an expert in the field of drug investigation and identification, particularly in the area of marijuana packaging, testified that the packaging of the marijuana was consistent with street packaging for sale to smaller dealers. He further testified that from 1,000 to 2,000 "joints" could be made from this amount of marijuana, an amount inconsistent with personal use only.
After viewing the evidence in a light most favorable to the prosecution, we find that the state presented ample evidence from which a rational trier of fact could have found beyond a reasonable doubt that *1351 the defendant committed the essential elements of the crime of possession of marijuana with intent to distribute.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
This assignment of error has been neither briefed nor argued, and thus is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

ASSIGNMENT OF ERROR NO. 3
By this assignment of error the defendant asserts that the trial court erred in imposing an excessive sentence. Defendant claims his sentence is excessive because the crime for which he has been convicted did not threaten any lives or cause any harm to society. Although defendant acknowledges his four previous felony convictions, he notes that these were all for simple burglary, with the last conviction occurring in 1980. For this reason defendant asserts that the imposition of a sentence of 25 years imprisonment at hard labor is grossly disproportionate to the crime for which he was convicted.
In giving its reasons for sentence, the trial court stated that it had given consideration to the sentencing guidelines provided for by La.C.Cr.P. art. 894.1. The trial court found that defendant was in need of correctional treatment that could best be provided by committment to an institution. The trial court stated that any lesser sentence would deprecate the seriousness of the crime in light of the fact that defendant had previously been convicted of four other felonies.
The trial court further stated that none of the mitigating factors of Article 894.1(B) were applicable to defendant. The court stated that defendant's criminal conduct caused harm to society in general and that there was no way to compensate society for the harm he had caused. The trial court felt that defendant must have contemplated that his criminal conduct would create serious harm. The court noted that defendant acted under no strong provocation and that no one induced or facilitated the commission of the crime. The court found no grounds tending to excuse or justify defendant's criminal conduct. The trial court noted that defendant had a vast history of prior criminal delinquency in addition to his felony convictions, and stated that defendant's criminal conduct would likely recur if he was not jailed. The court found that defendant's character and attitude indicated that he would not respond affirmatively to probationary treatment. The court also stated that defendant's imprisonment would not entail any hardship to any other party. The trial court sentenced defendant to 25 years of imprisonment at hard labor.
A sentence imposed, although within the statutory limit, may still violate the defendant's constitutional right against excessive punishment under the particular circumstances of the case. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. LeBlanc, 517 So.2d 951 (La.App. 3rd Cir. 1987). To constitute an excessive sentence, the penalty imposed must be so grossly disproportionate to the crime committed, in the light of the harm caused to society, as to shock the reviewing court's sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. LeBlanc, supra, at 962. The statutory guidelines of La.C.Cr.P. art. 894.1 furnish the criteria by which a reviewing court can measure whether a sentence is excessive. State v. Cann, 471 So.2d 701 (La.1985); State v. LeBlanc, supra.
Under Article 894.1, the trial judge must state the factual basis and considerations taken into account in imposing sentence. State v. Cox, 369 So.2d 118 (La.1979). The trial judge need not articulate every aggravating and mitigating circumstance recited in Article 894.1, provided the record reflects that the trial judge adequately considered these guidelines in particularizing the sentence to the defendant. State v. Franks, 373 So.2d 1307 (La.1979), cert. denied, 450 U.S. 983, 101 S.Ct. 1520, 67 *1352 L.Ed.2d 818 (1981); State v. Carrier, 453 So.2d 1216 (La.App. 3rd Cir.1984). Accordingly, the record must clearly reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982), aff'd. on remand, 446 So.2d 1210 (La.1984); State v. Slate, 440 So.2d 191 (La.App. 3rd Cir.1983).
The trial judge is given wide discretion in imposing sentences within the statutory limits and the sentence imposed shall not be set aside as excessive in the absence of manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982); State v. LeBlanc, supra. In this case, the trial judge adequately considered the Article 894.1 guidelines in particularizing the sentence to the defendant. Under LSA-R.S. 40:966(B)(2) defendant could have been sentenced to a term of imprisonment of up to 30 years. Under the facts of this case, the penalty imposed is not so grossly disproportionate to the crime committed as to shock this court's sense of justice. We cannot say that the trial court abused its discretion in sentencing defendant to 25 years imprisonment at hard labor.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
This assignment of error has been neither briefed nor argued, and thus is considered abandoned. State v. Dewey, supra.
For the above and foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.