STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 05-1642


STATE OF LOUISIANA

VERSUS

DALLAS D. DURGAN


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 5792-03
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy Howard Ezell, Judges.


CONVICTION REVERSED AND MODIFIED; SENTENCE VACATED;
REMANDED FOR RESENTENCING.


Paula Corley Marx
Louisiana Appellate Project
P. O. Box 80006
Lafayette, LA 70598-0006
(337) 991-9757
Counsel for Defendant/Appellant:
Dallas D. Durgan

**Ronald Augustin Rossitto**
**Fourteenth Judicial District Court District Attorney**
**Carla Sue Sigler**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602**
**(337) 437-3400**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, JUDGE.**

On February 27, 2003, Defendant, Dallas D. Durgan, was charged by bill of information with one count of possession of CDS II (cocaine) with intent to distribute, in violation of La.R.S. 40:967(A)(1). On March 7, 2003, Defendant pled not guilty to the offense charged. When trial commenced on September 16, 2003, Defendant waived his right to a jury trial. After both the prosecution and the defense presented their side of the case, the trial court found Defendant guilty as charged.

At the conclusion of trial, the district court ordered a pre-sentence investigation. On October 3, 2003, the trial court sentenced Defendant in accordance with the joint recommendation of both parties: twenty years at hard labor with the first two years to be served without benefit of probation, parole, or suspension of sentence.

Defendant filed a post-conviction relief application on May 13, 2005, seeking reinstatement of his right to appeal. On August 3, 2005, the trial court granted Defendant's request for an out-of-time appeal.[1] Defendant now appeals, arguing that there was insufficient evidence to convict him of the offense charged.

### STATEMENT OF FACTS

Joshua Reich, now a counter-terrorism manager for the Louisiana Office of Homeland Security, was the prosecution's first witness. Between 4:45 p.m. and 4:50 p.m. on June 20, 2003, Mr. Reich was working as a patrolman with the Lake Charles Police Department; as of that date, Mr. Reich had one year of experience as a patrol officer. As Mr. Reich drove down Pine Street, he noticed a gray or brown older model Cadillac sedan stopped in the middle of the road. Defendant, who is

---

[1]Although the record does not show that a hearing was held on Defendant's application for post-conviction relief, Defendant requested service upon the State. The State had several months between the date the application was filed and the date the trial court granted relief to file an objection. The record contains no such objection. Thus, the lack of hearing caused no prejudice to the State.

1

approximately six feet tall, sat halfway inside the passenger side of the vehicle with the door open. On cross-examination, Mr. Reich explained that he had seen Defendant approach the stopped sedan and enter its passenger side. Mr. Reich explained that drug dealers on foot frequently flag down vehicles and sell drugs to the drivers. In Mr. Reich's experience, that kind of activity indicated that a narcotics deal was taking place. As Mr. Reich approached the vehicle in his patrol car, the sedan sped away, running a stop sign and making Defendant almost fall to the ground.

Mr. Reich stopped his patrol car, called another unit for backup, left his lights on, and got out of the patrol car. As Mr. Reich exited his patrol vehicle, he identified himself as a police officer and told Defendant to stop. Defendant got up and ran away, pursued on foot by Mr. Reich. During the pursuit, Mr. Reich saw Defendant reach into his mouth and throw away a small package; Mr. Reich noted the location where the package landed. The pursuit ended when Defendant stopped and turned to face Mr. Reich, which was ten or fifteen feet from the point where Defendant had discarded the package. When Mr. Reich ordered Defendant to get on the ground, he resisted; a struggle ensued, wherein Mr. Reich subdued Defendant, maneuvered him onto the ground, and handcuffed him.

Mr. Reich then helped Defendant off the ground and walked him back to the patrol unit where another officer, Corporal Stockman, had already arrived at the scene and secured the area. Mr. Reich asked Corporal Stockman to hold Defendant while Mr. Reich returned to look for the discarded package. Mr. Reich easily and quickly located the small wet package. The discarded package contained ten to eleven rocks of crack cocaine. Mr. Reich testified that the amount of crack cocaine found in the package and Defendant's behavior were consistent with sale of illegal drugs. It is not unusual for a drug dealer to be arrested without money on him because, often, another

2

person working with the dealer holds the money. Three to four people were in the nearby area.

Allen Reinecke, who works for the Lake Charles Police Department as an evidence technician, was the second witness called to testify for the State. Mr. Reinecke detailed the chain of custody within the police department for the bag and the substance contained therein. The third witness to testify for the prosecution was Margaret Luckie, who is an evidence technician at the Southwest Louisiana Criminalistic Laboratory. Ms. Luckie testified to the evidence's chain of custody within the crime lab. The last witness called by the State was Gary Rogers, the director for the crime lab, who testified as to the testing and identity of the substance found by Mr. Reich; the substance was an off-white material weighing 0.82 grams, less than $^{1}/_{28}$ of an ounce, and containing a cocaine base.

In response to the State's case, Defendant testified on his own behalf. Defendant had been walking down the street with a girl when a white Cadillac Deville pulled up to them. Someone in the vehicle opened the passenger door and called the girl to the car. After speaking with the people in the car, the girl returned to Defendant and told him that one of his friends had died that morning. After hearing what the girl had to say, Defendant began to walk to his deceased friend's house.

Defendant turned around and saw Mr. Reich getting out of his unit. Mr. Reich acted like he had not seen the Cadillac, walked toward Defendant, and asked Defendant why he flagged down the car. When Defendant exclaimed that he had not flagged the car down, Mr. Reich approached him and told him to get against the car. Defendant then ran away until Mr. Reich told him to stop or be maced. Defendant

stopped and laid down on the ground, which was when Mr. Reich arrested him for trespassing and resisting arrest.

After some conversation, two more police cars arrived. In talking to the two newly arrived police officers, Mr. Reich told them that he had not seen Defendant throw anything. Mr. Reich then left to make sure that no drugs had been discarded. When Mr. Reich returned with the drugs, he again arrested Defendant, this time for the drugs, and again stated that he had not seen Defendant throw any drugs. Defendant averred that the drugs were not his.

On cross-examination, Defendant admitted that he had twice previously been convicted of distribution of cocaine, but Defendant stated that he had never flagged down a car to sell his drugs.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

Defendant argues that his conviction should be reversed because there was insufficient evidence to support a finding that he possessed cocaine with intent to distribute. Defendant asserts that the State failed to prove that he had specific intent to distribute the cocaine. Defendant contends that his mere presence at the passenger door of a vehicle does not prove an intent to distribute.

In determining sufficiency of the evidence on appeal, this court has previously stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

4

have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

*State v. Touchet*, 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902 (*quoting State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). "The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony; thus, a reviewing court may impinge on the 'fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law.'" *State v. Johnson*, 03-1228, pp. 4-5 (La. 4/14/04), 870 So.2d 995, 998, (*quoting State v. Sylvia,* 01-1406, p. 2 (La. 4/9/03), 845 So.2d 358, 361).

In finding Defendant guilty, the district court focused its statement solely on witness credibility rather than elements of the offense:

Defendant was charged by bill of information with possession of CDS Schedule II with intent to distribute. There are basically two stories about what happened, that of the police officer who was the arresting officer and that of the defendant.

I find the defendant's version basically incredible. I know of no reason why the officer should sit and make up a story about what happened, finding drugs at a location where he particularly says that he observed them being thrown.

I was a little concerned about the addresses of O'Brien and Pine Street, but I'm satisfied that they're basically cattycorner or directly behind one or the other.

The defendant's story is supported by no one. There are other people who could have come forward. He talked about his probation officer who could have come forward and said something about him.

He talked about the girl who he was with who could have come forward and said what happened.

He talked about the people in the car whom he knew who could have come forward and said something about it.

And his story is basically unsubstantiated. And because of his prior criminal history, I discount completely everything that he says. I find him guilty as charged.

In pertinent part, La.R.S. 40:967(A)(1) states, "[I]t shall be unlawful for any person to knowingly or intentionally . . . possess with intent to . . . distribute . . . a controlled dangerous substance or controlled substance analogue classified in Schedule II." Cocaine is one of the controlled dangerous substances classified in Schedule II. La.R.S. 40:964(II)(A)(4). Thus, the prosecution must have proved that (1) Defendant knowing and intentionally possessed cocaine and that (2) Defendant intended to distribute the cocaine.

In *State v. Hamilton*, 546 So.2d 554 (La.App. 1 Cir. 1989), the first circuit found knowing and intentional possession of cocaine in similar circumstances. A police officer, while patrolling an area known for drug trafficking, observed Hamilton and another man acting in a manner consistent with a narcotics transaction. The officer then saw Hamilton throw a small black object as the police unit approached. A search of the area located a small black metal box containing two bags of cocaine.

In *State v. Senegal*, 542 So.2d 792 (La.App. 3 Cir. 1989), this court also found sufficient evidence to support a finding of knowing and intentional possession of cocaine in similar circumstances. A detective watched as Senegal threw three packets

6

containing a white powdery substance behind an arcade game. Chemical analysis revealed that one of the packets contained cocaine.

Because the prosecution presented Mr. Reich's testimony that he saw Defendant discard the package and then later recovered the package from where he had seen that package land, it proved that Defendant knowingly and intentionally possessed the package and its contents. Additionally, the State introduced the chemical analysis of the substance contained in the package showing that the substance was 0.82 grams of cocaine. Thus, the State introduced sufficient evidence to show that Defendant knowingly and intentionally possessed cocaine.

This court has previously set out the appropriate analysis for determining whether the prosecution proved that Defendant intended to distribute the cocaine:

> [Defendant's] intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to reasonable inferences of intent to distribute. *State v. Ramoin*, 410 So.2d 1010 (La.1981); *State v. Williams*, 457 So.2d 902 (La.App. 3rd Cir.1984), *writ denied*, 461 So.2d 313 (La.1984). In *State v. House*, [325 So.2d 222 (La.1975)], the court enumerated several factors from which the intent to distribute may be inferred. Those factors include evidence:
>
> > (1) that the defendant ever distributed or attempted to distribute any [of the drug];
> > (2) that the [drug] was in a form usually associated with [drug] possessed for distribution to others;
> > (3) that the amount was such as to create a presumption of intent to distribute;
> > (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and
> > (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

*State v. Segura*, 546 So.2d 1347, 1350 (La.App. 3 Cir. 1989); *see also State v. Hearold*, 603 So.2d 731 (La.1992)(footnote omitted).

> Intent, like any other fact may be proved by circumstantial evidence. La.R.S. 15:445. This is evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be

7

inferred. McCormick, Law of Evidence, p. 435 (2d ed. 1972); Prosser, Law of Torts, p. 212 (4th ed. 1971). In criminal cases, the rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438.

Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn. Like all other evidence, it may be strong or weak; it may be so unconvincing as to be quite worthless, or it may be irresistible and overwhelming. There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog passed by. The gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion. Prosser, *supra*, at 212.

Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

*State v. Chism*, 436 So.2d 464, 468-69 (La.1983).

Defendant argues that the State notified the defense that it did not intend to use other crimes evidence, so the evidence of Defendant's prior convictions for drug distribution should be considered impeachment evidence. Defendant points out that there is no evidence that the ten or eleven rocks were individually packaged and that altogether they only weighed 0.82 grams. The testimony shows this amount was consistent with distribution, but fails to show that it was inconsistent with personal use. Additionally, Defendant points out that none of the evidence presented at trial

8

indicates that any paraphernalia associated with drug sales was found on Defendant at the time of his arrest.

We will now apply the five factors as were listed in *Segura,* 546 So.2d 1347 to the instant case. First, Defendant is correct that the State did not introduce other crimes evidence as part of its case, but rather introduced Defendant's convictions under La.Code Evid. art. 609.1, which provides for the use of prior convictions to impeach a witness's testimony. Therefore, Defendant's prior convictions for distribution should not be used as La.Code Evid. art. 404(B) evidence to demonstrate Defendant's intent to distribute the cocaine.[2]

Second, the prosecution submitted no evidence that the cocaine was packaged in a manner consistent with distribution. Third, because the cocaine weighed 0.82 grams (less than $^1/_{28}$ of an ounce), it does not create a presumption of Defendant's intent to distribute. *See State v. Decuir,* 599 So.2d 358, 364 (La.App. 3 Cir.), *writ denied,* 605 So.2d 1095 (La.1992)(2.79 grams, or about one-tenth of an ounce, is insufficient to create the presumption); *State v. McIntyre,* 544 So.2d 86, 89 (La.App. 3 Cir.1989)(7.75 grams, slightly more than one-fourth of an ounce, is also insufficient to create the presumption).

Fourth, the State presented evidence, via Mr. Reich's testimony, that the amount of the cocaine as well as Defendant's behavior was consistent with the sale of drugs:

> Q. Now, in your experience have you dealt with both people who are selling rocks as well as those who are strictly users?

---

[2]For discussions about the difference between evidence submitted under La.Code Evid. art. 609.1 and evidence submitted under La.Code Evid. art. 404(B), *see State v. Morehead,* 38,124 (La.App. 2 Cir. 4/2/04), 870 So.2d 428, *writ denied,* 04-1283 (La. 10/15/04), 883 So.2d 1043; *State v. Reeder,* 95-2407 (La.App. 4 Cir. 7/16/97), 698 So.2d 56; *State v. Clark,* 95-1354 (La.App. 3 Cir. 12/11/96), 687 So.2d 470, *writ denied,* 97-715 (La. 6/13/97), 695 So.2d 986; *State v. Powell,* 28,788 (La.App. 2 Cir. 11/1/96), 683 So.2d 1281, *writ denied,* 97-92 (La. 5/30/97), 694 So.2d 243.

A.     Yes.

Q.     This amount would be consistent with which type of person?

A.     Selling.

Q.     And the activity that you saw [Defendant sitting in the passenger side seat of a car stopped in the middle of the street] was that consistent with someone - - that Mr. Durgan was doing, consistent with someone buying or selling?

A.     Yes, for selling, sir.

Q.     In a typical situation, do you see cars being flagged down quite a bit in crack sales?

A.     Yes, sir.

Q.     And typically who is the person who is buying the cocaine?

A.     Normally, the person in the vehicle, sir.

Q.     And the person selling would be which one?

A.     The one on foot, sir.

In this exchange, Mr. Reich only implied that the 0.82 grams of crack cocaine was inconsistent with the amount that would be found on a user; he did not state, "this amount of cocaine is inconsistent with personal consumption even for a heavy user." In this passage, Mr. Reich also only implied that Defendant's behavior was inconsistent with the actions of someone purchasing crack cocaine or innocent activity; he did not say, "a person who sits in the passenger side of someone's car parked in the middle of the road is never the purchaser of drugs and never sits there for innocent reasons." Therefore, the State's evidence that would fit within the fourth factor for determining intent to distribute was only submitted through implication.

Finally, Defendant is also correct in asserting that the State failed to introduce any evidence showing that Defendant possessed distribution paraphernalia either on his person or in his home at or around the time of his arrest.

10

Because the State only used circumstantial evidence to prove Defendant's intent to distribute, it must have excluded every other reasonable hypothesis. The evidence from which the prosecution seeks to prove Defendant's intent is as follows: Mr. Reich seeing Defendant sitting in a car parked in the middle of the road, the car speeding off, and Defendant's possession of 0.82 grams of crack cocaine in the form of ten or eleven rocks. The implied and stated evidence shows that Mr. Reich, based on his one-year experience as a patrol officer, felt that someone sitting in the passenger seat of a car stopped in the middle of the road with the door open *normally* indicated a narcotics deal, the person who sat in the passenger seat was *normally* selling the narcotics, and the amount of CDS possessed by Defendant was consistent with distribution. Mr. Reich's opinion that the amount of cocaine was inconsistent with a user and that the activity was inconsistent with someone buying crack is only an inference from the questions asked and answers given.

In *State v. Fisher*, 628 So.2d 1136 (La.App. 1 Cir. 1993), *writs denied*, 94-226, 94-321 (La. 5/20/94), 637 So.2d 474,476, the first circuit found that the State failed to eliminate the reasonable hypothesis that the drugs found on Fisher were for personal consumption. Fisher had rented a motel room; and without stopping on the way to his room, he knocked on another door. The occupant of the other room exited, walked to Fisher's room, and entered while holding something down by his side. The other man exited Fisher's room and returned to his room. The motel manager called the police, and the police watched Fisher's room for approximately two hours, during which no activity occurred, before securing a warrant.

The police, acting on the warrant, entered Fischer's room where he was sleeping on the bed. After they woke him, Fisher quickly removed a bag containing about twenty rocks of cocaine from beneath his pillow, stuffed the bag into his mouth,

11

and swallowed. During the ensuing search, the police found approximately $688.00 on Fisher's person. Worried that Fisher had swallowed a lethal amount of cocaine, the police had his stomach pumped, and analysis of his stomach contents showed that they contained cocaine. Further testimony at Fisher's trial revealed the following:

> One of the officers testified that the street value for crack cocaine at that time was about twenty dollars per rock. Another officer testified that he had never seen anyone purchase twenty rocks for personal consumption. He stated that the most he had ever seen purchased for personal consumption was five rocks. He claimed that when a person purchases twenty rocks of cocaine, the intent is to redistribute the cocaine. This same officer however, admitted that if money is not a problem, a heavy cocaine user could use two or three rocks each hour.

*Id*. at 1139.

In finding that the State failed to meet its burden of proof, the first circuit found that the evidence did not actually show Fisher attempted distribution. The first circuit held that the visit by the other room's occupant was equally consistent with distribution to Fisher, distribution by Fisher, or unrelated innocent activity. The *Fisher* court noted that Fisher's cocaine was packaged in a single plastic bag smaller that the palm of his hand and that there was no evidence showing that this was standard packaging for distribution of the individual rocks. The first circuit explained that the officer who testified that a person who purchased twenty rocks of cocaine had the intent to redistribute them had not been qualified as an expert; he was testifying based on his one-year and three-months experience in undercover narcotics. Moreover, the officer had admitted a heavy user could consume two to three rocks in an hour. The *Fisher* court also pointed out that the prosecution presented no evidence concerning drug paraphernalia. The first circuit factored into its reasoning that no weapons were found on Fisher and that, even though Fisher had $688.00, there was no evidence Fisher had actually obtained the money by distribution. The first circuit

12

also noted that, even though it was possible, the State failed to determine from Fisher's stomach contents how much cocaine the bag had contained.

Conversely, in *State v. Daniels*, 614 So.2d 97 (La.App. 2 Cir.), *writ denied*, 619 So.2d 573 (La.1993), the second circuit found intent to distribute based on expert testimony that the cocaine was packaged in a manner commonly used by drug dealers and that the amount, thirty-five rocks, of crack seized was inconsistent with personal use even for a heavy user.[3] Both *Fisher* and *Daniels* deal with relatively small amounts of crack cocaine contained in a single package, and the distinction between them seems to hinge on the presence of expert testimony regarding the factors for determining intent to distribute.

In applying *Fisher*, 628 So.2d 1136, to the instant case, Mr. Reich's opinions would be discounted because his one-year experience was even less than the officer's in *Fisher* and because he was not offering expert testimony as the prosecution did in *Daniels*. If one discounts Mr. Reich's opinion as was done by the *Fisher* court, the evidence does not exclude all reasonable hypotheses because the prosecution failed to rule out the possibility that Defendant was purchasing the drugs from the sedan's driver, that Defendant was in the car for innocent reasons, that the vehicle sped away for unrelated incriminating reasons, that Defendant was an average cocaine user with an abnormal amount of crack on his person, and that Defendant was a heavy cocaine user with a proportionate amount of crack on his person.

Furthermore, the only evidence applicable to determining Defendant's intent to distribute under the factors discussed in *Segura* is an opinion that had to be inferred from the record and that inferred opinion only addresses one of those factors.

---

[3]There are many other cases where a defendant was found guilty of distribution, but most of those cases involve large amounts of CDS, someone actually seeing that defendant distribute the CDS, individually packaged CDS, or an officer arranging to meet the defendant for the purpose of buying a CDS from that defendant.

*Segura*, 546 So.2d at 1349. Therefore, this court may find that the State failed to prove Defendant's intent to distribute under the appropriate analysis. In which case, this court should enter a guilty verdict of the lesser, included, and responsive offense of possession of a controlled dangerous substance, in violation of La.R.S. 40:967(C). La.Code Crim.P. art. 814(A)(49); La.Code Crim.P. art. 821(E); *see State v. Clark*, 04-901 (La.App. 3 Cir. 12/8/04), 889 So.2d 471, (reversed a conviction for forcible rape and entered a finding of guilt for simple rape); *Fisher*, 628 So.2d 1136 (reversed a conviction for possession with intent to distribute and entered a finding of guilty of possession).

## CONCLUSION

This court will reverse the Defendant's conviction for possession of a controlled dangerous substance with intent to distribute and enter a judgment of guilty to possession of a controlled dangerous substance, in violation of La.R.S. 40:967(C). Because the sentencing range for possession of a controlled dangerous substance, cocaine, is substantially less than that required for a conviction of possession of a controlled dangerous substance, cocaine, with intent to distribute, this court remands Defendant's case to the trial court for re-sentencing. La.R.S. 40:967(C)(2); La.R.S. 40:967(B)(4)(b).

**CONVICTION REVERSED AND MODIFIED; SENTENCE VACATED; REMANDED FOR RESENTENCING**.