NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1299

STATE OF LOUISIANA

VERSUS

ALVIN DONALD PARKER

**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO. 09-566
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

**Jeffrey J. Trosclair, Assistant District Attorney**
**Sixteenth Judicial District**
**St. Mary Parish Courthouse**
**Franklin, LA 70538**
**Counsel for Appellee:**
        **State of Louisiana**

**Jermaine D. Williams, Attorney at Law**
**108 West Congress Street**
**Lafayette, LA 70501**
**Counsel for Defendant/Appellant:**
        **Alvin Donald Parker**

**PAINTER, Judge.**

Defendant, Alvin Donald Parker, appeals his conviction for attempted possession of cocaine, violations of La.R.S. 40:967(A)(1) and 40:967(C). For the following reasons, we affirm Defendant's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2008, while working on a roadside cleanup crew for the City of New Iberia, Defendant sold one-half ounce of cocaine to an undercover police officer. On March 24, 2009, he was charged by bill of information with one count of distribution of a schedule II controlled dangerous substance, a violation of La.R.S. 40:967(A)(1). Following a jury trial, Defendant was found guilty of attempted possession of cocaine, violations of La.R.S. 14:27 and 40:967(C).

The State filed a bill of information charging Defendant as a habitual offender pursuant to La.R.S. 15:529.1. Defendant then filed a "Motion for Post Verdict Judgment of Acquittal, or, in the Alternative, Motion for New Trial" and a "Motion to Supplement Trial Record with Proffered Testimony." A hearing was held, and the trial court denied the motion for post verdict judgment of acquittal and for a new trial. Defendant proffered the testimony of Jerath Bessard at that time. A habitual offender hearing was also held, and Defendant was adjudicated a third felony offender and was sentenced to five years at hard labor, with credit for time served, to be served consecutively with any other sentence he was required to serve.

Defendant now appeals, asserting that: (1) the trial court erred in excluding evidence, argument, and testimony regarding a photographic lineup wherein the State's main witness identified a person other than Defendant; and (2) there was insufficient evidence to support a finding of guilty of attempted possession of cocaine.

1

**DISCUSSION**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

*Sufficiency of the Evidence*

We first address Defendant's contention regarding the sufficiency of the evidence. Should there be merit to his assertion that the evidence was insufficient to sustain the responsive verdict of attempted possession of cocaine, he would be entitled to an acquittal and any remaining assignments of error would be moot. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981). For the following reasons, we find there was sufficient evidence to support the conviction.

Defendant argues that viewed in a light most favorable to the prosecution, the evidence did not reasonably support a finding of guilty of attempted possession of cocaine.

Defendant was originally charged with distribution of cocaine. Louisiana Revised Statutes 40:967(A)(1) provides that it is "unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II." He was convicted of the responsive verdict of attempted possession of cocaine. Louisiana Revised Statutes 40:967(C) provides that "[i]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner." Cocaine is a Schedule II controlled substance. La.R.S. 40:964(II)(A). Finally, the attempt statute, La.R.S. 14:27, in pertinent part, provides:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

2

. . . .

C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime although it appears on the trial that crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

The standard for determining the sufficiency of the evidence is well-established in Louisiana jurisprudence, as follows:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green,* 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall,* 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green; supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La.1992) at 1324.

*State v. Ragas*, 98-11, p. 13 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-07 (quoting *State v. Egana,* 97-318, pp. 5-6, (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28).

At trial, Tasia Burgess testified that at the time of the purchase of the cocaine, she was working with the Iberia Parish Sheriff's Office as a narcotics investigator. She stated that pursuant to information received from a confidential informant, Defendant was targeted as a cocaine dealer. An undercover agent, Jareth Bessard, was sent with the confidential informant to purchase cocaine from Defendant. The informant set up the buy. The transaction was conducted on December 17, 2008, on Weeks Street, near the corner of Admiral Doyle, where Defendant was working around noontime. The agent was given five hundred dollars and shown a picture of Defendant. He was also wired, and Burgess testified that she was able to hear the exchange from a few blocks away.

3

After the purchase, the agent gave the cocaine to Burgess, who sent the package off to Acadiana Crime Laboratory for analysis. Burgess further stated that after the purchase, the agent was again shown the picture of Defendant to be sure it was the same person from whom he bought the cocaine. Defendant was not arrested and charged until February of 2009. Burgess also testified that there were two other transactions in which the undercover agent had also participated on the same day.

Bessard, a sergeant with the Vermillion Parish Sheriff's Office, testified that he worked as an undercover officer in Iberia Parish. He stated that on December 17, 2008, he was shown a picture of Defendant, given Defendant's name and nickname, "69," and five hundred dollars to purchase cocaine. The deal was set up by the informant. Then, they drove to Weeks Street in a black vehicle and purchased one half ounce of cocaine. The sergeant testified that at the time of the purchase, he saw two other people working along the street. He stated that he was sitting in the passenger seat of the car and that he got a good look at Defendant. He stated that the transaction lasted about a minute. Following the purchase, he was again shown a picture of Defendant and verified that Defendant was the person from whom he purchased the cocaine. He stated that there had been two other drug transactions in which he was involved on that particular date.

Colby Peters, Tawasky Joseph, and Julie Segura worked on the same roadside crew as Defendant. They all testified that they knew Defendant, whom they also knew as "69," from working with him for a few months during the winter. They all remembered working that particular day, and they all testified that they did not observe Defendant approach a black car, nor had they ever seen him sell drugs while they were working along the city's roadways.

Julie Segura testified that she was the supervisor of the group. She stated that she remembered that day because there had been some complaints and that two of her superiors, Maggie Segura and James Russell, had come out to the work site.

James Russell testified that he was on the site for about twenty minutes around lunch time on December 17, 2008, and he did not see Defendant approach a black

4

vehicle. However, Maggie Segura testified that she spent a few hours on the street with the crew around lunch time and saw Defendant approach a black car. She stated that she was concerned and discussed it with Julie Segura.

Julie Segura was recalled to the stand and testified that she did recall a black vehicle. She stated that cars often stopped and chatted with Defendant and that was one reason the group was getting into trouble with their employers. She denied having spoken to Maggie Segura about Defendant's activities.

Maggie Segura was recalled to the stand and testified that Julie Segura had advised her that Defendant was dealing drugs during work time and that, on that particular day, a drug transaction had happened between the occupants of the black car and Defendant.

Finally, Defendant testified that although he had spent time in prison for dealing drugs in the past, he has not dealt drugs since he has been out of prison, and he did not see a black car or sell cocaine to anyone in a black car on that day.

In brief, Defendant argues that the State failed to establish that he had the specific intent to possess a controlled dangerous substance. "All of the State's evidence isolated [sic] on convicting Parker of Distribution of Cocaine." Whether the State proved that Defendant exhibited the required specific intent to possess a controlled dangerous substance is academic in this case; the evidence was sufficient to support the original charge of distribution of cocaine. In *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983), the court held that compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge.

In *State v. Perkins,* 07-423, p. 4 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, 1181, *writ denied,* 07-2408 (La. 5/9/08), 980 So.2d 688, this court held:

> It is unlawful for any person to knowingly or intentionally distribute cocaine, which is classified as a controlled dangerous substance La.R.S. 40:967(A)(1); La.R.S. 40:964. "A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients." *State v. Anderson*, 29,282, p. 3 (La.App. 2 Cir. 6/18/97), 697 So.2d 651, 655. To establish the offense of distribution of a controlled dangerous substance, the state's burden

5

is to establish beyond a reasonable doubt "(1) 'delivery' or 'physical transfer;' (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance." *Id*.

The "intent to distribute may be established by proving circumstances surrounding a defendant's possession which give rise to reasonable inferences of intent to distribute." *State v. Durgan,* 05-1642, p. 7 (La.App. 3 Cir. 5/31/06), 931 So.2d 1182, 1187.

Defendant argues that Burgess did not obtain fingerprints from the cellophane wrapper containing the cocaine and that the State did not show a video tape or play an audio tape of the transaction or even recover the money paid for the cocaine. He argues that "[t]he State offered absolutely no evidence that Parker attempted to possess cocaine."

Burgess testified that there were no fingerprints taken or recordings made because Defendant was specifically targeted. A confidential informant arranged the sale. Sergeant Bessard testified that prior to meeting with Defendant, he looked at Defendant's picture and was given his name and nickname. He gave Defendant five hundred dollars, and Defendant gave him one-half ounce of cocaine. Following the purchase, when Sergeant Bessard gave the cocaine to Burgess, she again showed him the picture of Defendant, and he again verified that the man was the one from whom he bought the cocaine. The cocaine was tested, and there was testimony at trial that the substance received was indeed cocaine. *See State v. Cox*, 44,878 (La.App. 2 Cir. 12/9/09), 26 So.3d 929, *writ denied,* 09-2829 (La. 6/18/10), 38 So.3d 320, wherein the evidence was sufficient to convict the defendant of distributing cocaine.

Taken in a light most favorable to the prosecution, the evidence was sufficient to sustain a conviction for distribution of cocaine. The verdict of attempted possession of cocaine reflected the triers of fact's right to compromise between the verdicts of guilty of distribution and not guilty. *State v. Charles*, 00-1611 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, *writ denied,* 01-1554 (La. 4/19/02), 813 So.2d 420.

There is no merit to this assignment of error.

*Evidence of Photographic Lineup*

Defendant asserts that the trial court erred when it would not allow him to cross examine Sergeant Bessard regarding a photographic lineup in another matter. Defendant contends that the testimony he sought would have tested Sergeant Bessard's perceptions and memory of the events of December 17, 2008. Defendant argues that because of certain inconsistent statements made by the sergeant during trial, had he been allowed to present the testimony, there was a probability that the verdict would have been different.

At trial, Defendant attempted to question the sergeant about a photographic lineup of another person who was involved in a drug purchase on the same day. The State objected, and the trial court sustained the objection but stated that it would allow Defendant to proffer the testimony at a later time.

On April 14, 2010, at a hearing on Defendant's "Motion for Post-Verdict Judgment of Acquittal or, in the Alternative, Motion for New Trial," the following testimony of Sergeant Bessard was proffered:

Q. Sergeant Bessard, On December 17th, 2008, you did an undercover investigation into Alvin Parker; is that correct?

A. Yes.

Q. On that same day, there was another undercover operation with regard to a subject, Percy Roberts. You testified earlier that you were not part of that investigation. Were you?

A. I don't think so.

Q. As a matter of fact, back in January, you testified that you were not.

A. All right.

Q. So is it that you don't think so or were you not?

A. If I said I wasn't, I wasn't.

Q. Miss Burgess also said that you were not part of that Percy Roberts investigation. I'm going to show you a photo lineup that we'll mark for identification purposes as Defense Proffer Number 1. I want you to look there at Number 2. It's circled. You see that?

A. Yeah.

7

Q. Do you see here it's got a "J.B.".

A. Yeah, that's my initials.

Q. Are those your initials?

A. Yes, it is.

Q. And it's dated December 17th, 2008?

A. Yes.

Q. Okay. I got this out of Percy Roberts' folder.

A. All right.

Q. Okay. And this purports to be a lineup that contains Percy Roberts. Now my question to you is: If you were not part of that investigation with regard to Percy Roberts, then you couldn't have made this identification if this purports to be in his file?

A. That's my initials on that lineup.

Q. But you couldn't make any identification with regard to an investigation involving Percy Roberts, correct?

A. What you mean? Say that again.

Q. You couldn't make any identification with regard to the investigation surrounding Percy Roberts?

A. No, I don't remember that one.

Q. So can you explain why your initials are on this sheet dated December 17, 2009.

A. No. I can't. I put them on there.

Q. And let's be clear. This is not a photo lineup that contains Alvin Parker?

A. No.

Q. And if it is, Number 2 is not Alvin Parker?

A. No, it's not Alvin Parker.

Q. Do you know who Number 2 is?

A. I don't even recognize this guy.

In brief, Defendant points out that the sergeant testified at trial that when he purchased the cocaine, there were two other people working at the scene. However, at a prior hearing, he testified that Defendant was by himself. At trial, the sergeant

8

explained that Defendant was standing by himself when he exchanged the cocaine for money but that there were other people working alongside the road. Defendant also points out that Sergeant Bessard testified that Defendant was wearing a black hoodie on the day of the sale. Yet, Burgess testified that Defendant was wearing "an Iberia Parish jumpsuit." Burgess stated that she had only seen Defendant that day from a distance. She testified that he was wearing "[h]is Iberia Parish maintenance worker uniform possibly." Defendant contends that together with these inconsistencies, the proffered testimony was relevant:

> . . . in determining Bessard's recollection of the day in question. The evidence presented during the proffer reveals that Bessard mistakenly signed off on a photo lineup identifying a suspect of an alleged drug transaction that he was not involved in. This mistake by Bessard, coupled with the aforementioned contradictions and mistakes, shows that Bessard's perceptions and memory of the date in question were inaccurate, which directly affects his credibility as a witness.

At the hearing and in brief to this court, the State argued that the testimony was not relevant to the truth of the matter and would serve only to mislead and confuse the jury. Louisiana Code of Evidence Article 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Furthermore, La.Code Evid. art. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time."

Defendant argues that the evidence directly affected the sergeant's credibility as a witness. It is not quite clear from Defendant's brief whether he is asserting that the sergeant made a mistake in the identity of the person from whom he purchased the cocaine or that he is simply not telling the truth. However, in this case, Defendant was targeted. He was not an unknown person selling drugs whom the sergeant encountered by happenstance. The sergeant was given Defendant's name, even his nickname, and sent to a location where Defendant was working and, in exchange for money, received cocaine. Even if the sergeant did not remember Defendant's face,

he testified that a man named Alvin Parker, AKA "69," was working at Weeks Street and Admiral Doyle and sold him cocaine. Segura, Joseph, and Peters all testified that a man they knew as Alvin Parker, AKA "69," was working with them that day at that location. There was even testimony that Defendant was seen approaching a black vehicle around noontime that day. Finally, a reviewing court cannot second guess a credibility determination made by the trier of fact with regard to any weight given to the respective witnesses beyond that required under the *Jackson* standard. *State v. Ordodi,* 06-207 (La. 11/29/06), 946 So.2d 654. *See also Perkins*, 968 So.2d 1178.

The information that the sergeant does not remember initialing a photographic lineup of another person who was also involved in a drug transaction the same day was of no import as to whether Defendant sold the sergeant cocaine and would only serve to mislead and confuse the jury. We conclude that the trial court did not err when it determined that the proffered testimony was not relevant, and we find that there is no merit to this assignment of error.

### DECREE

For all of the foregoing reasons, Defendant's conviction for attempted possession of a Schedule II narcotic is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.