# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 07-1237

**STATE OF LOUISIANA**

**VERSUS**

**ARCHIE LOUIS CARTER, JR.**

**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 283,812
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese, Judges.

**AFFIRMED IN PART;
REVERSED IN PART.**

**W. Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, Louisiana  71112**
**(318) 746-7467**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Archie Louis Carter, Jr.**

**James D. Downs**
**District Attorney - Ninth Judicial District**
**ADA Loren M. Lampert**
**Post Office Drawer 1472**
**Alexandria, Louisiana 71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

The Defendant, Archie Louis Carter, Jr., was charged by bill of information filed on August 29, 2006, with the following: count I - possession of Controlled Dangerous Substances (CDS) Schedule V, codeine, in violation of La.R.S. 40:970(C); count II - possession with intent to distribute CDS Schedule III, hydrocodone, in violation of La.R.S. 40:968(A)(1); count III - obstruction of justice, in violation of La.R.S. 14:130.1; and count IV - obstruction of justice, in violation of La.R.S. 14:130.1. The Defendant entered a plea of not guilty to all charges on September 22, 2006. On October 5, 2006, the bill of information was amended to add the following charges: count V - possession of CDS Schedule I, marijuana, in an amount greater than sixty pounds but less than two thousand pounds, in violation of La.R.S. 40:966(F)(1); and count VI - conspiracy to distribute CDS Schedule I, marijuana, in violation of La.R.S. 14:26 and La.R.S. 40:966(A)(1).

The case proceeded to trial by jury with jury selection commencing on April 17, 2007. On April 20, 2007, the State dismissed count III, one of the obstruction of justice charges. The jury subsequently found the Defendant guilty as charged on counts I, II, IV, V, and VI. The Defendant filed a Motion for New Trial on May 9, 2007, and the motion was denied at a hearing held on May 11, 2007. On May 14, 2007, the Defendant was sentenced as follows: count I - five years at hard labor; count II - five years at hard labor; count IV - five years at hard labor; count V - thirty years at hard labor, with the first five years to be served without benefit of probation, parole, or suspension of sentence, and a fine of $50,000.00; count VI - ten years at hard labor. Counts I, II, IV, and VI were ordered to run concurrently with each other and with count V. A Notice of Appeal was filed on May 14, 2007. On May 23, 2007,

1

the Defendant filed a Motion to Reconsider Sentence, which was denied.

The Defendant is now before this court asserting five assignments of error contending the following:

1) There is insufficient evidence to prove beyond a reasonable doubt the guilt of Defendant for the offense of possession of CDS Schedule V, codeine; possession with intent to distribute CDS Schedule III, hydrocodone; obstruction of justice; possession of CDS Schedule I, marijuana; and conspiracy to distribute CDS Schedule I, marijuana.

2) The trial court erred in allowing the admission of other crimes evidence.

3) The trial court erred in denying the Defendant's motion for a mistrial.

4) The trial court erred in not allowing the testimony of Bridgette Brown.

5) The sentences imposed are excessive for these offenses and this offender.

The Defendant has filed a *pro se* brief asserting the following claims:

1) The statement given to police by the alleged co-defendant Trevor Marshall was unreliable and insufficient to corroborate the details of the offense that form the basis for the conviction.

2) There was no direct or circumstantial evidence that the Defendant placed pills in the backseat of Officer Todd Beamon's police car.

3) The pills should have been tested by chemical analysis.

4) Evidence of other crimes was improperly admitted.

5) Detective Horn's actions amounted to entrapment.

6) None of the evidence regarding the liquid substance tended to prove the Defendant possessed anything illegal.

7) The Defendant was not in possession of any drugs.

8) The testimony of Trevor Marshall and Detective Horn was not sufficient to support the Defendant's convictions.

2

9) The sentences imposed are excessive.

10) The reliability of the informant and the specificity of the tip were insufficient to provide reasonable suspicion to justify the initial stop of the vehicle.

## FACTS

The Defendant was charged in a single bill of information with offenses occurring on July 11, 2006, and in August of 2006. The following offenses occurred in July of 2006: 1) possession of CDS Schedule V, codeine; 2) possession with intent to distribute CDS Schedule III, hydrocodone; and 3) obstruction of justice. In August of 2006, the following offenses occurred: 1) possession of CDS Schedule I, marijuana; and 2) conspiracy to distribute CDS Schedule I, marijuana.

### *JULY 11, 2006*

On July 11, 2006, Detective Alton Horn arrested Cedric Jones, who had cocaine and twenty-five pounds of marijuana in his possession. Jones informed Detective Horn that the Defendant was his supplier. Detective Horn and Jones then set up a "buy/bust" wherein the Defendant was to deliver a brick of cocaine to Jones; however, police intended to stop the Defendant before the delivery was made. Police officers were stationed on Interstate 49 and Highway 1, looking for the Defendant. However, the Defendant was stopped by Corporal Chris Cooper while pulling into a residence on Kary Street. Corporal Cooper testified that he approached the car, and, at that time, the Defendant was sitting in the driver's seat. Corporal Cooper then removed the Defendant from the car, patted him down, and handed him over to narcotics officers.

Detective Horn testified that he and Officer Todd Beamon escorted the Defendant to Officer Beamon's car. Detective Horn further testified that he patted

3

the Defendant down then placed him in Officer Beamon's car. Detective Horn failed to detect any contraband on the Defendant's person at that time.

After Officer Beamon arrived at the scene, he scraped a substance from the floorboard of the Defendant's car and placed it in a Styrofoam cup. Officer Beamon testified that he believed the substance was hydrocodone syrup, a commonly prescribed cough medication. Officer Beamon subsequently transported the Defendant to the Narcotics Division. After bringing the Defendant into the building, Officer Beamon searched his backseat and found thirteen pills marked "Watson 503." Officer Beamon testified that the pills were found in the area underneath where the Defendant had been sitting. Detective Horn and Alex King, a forensic chemist with the North Louisiana Crime Lab, testified that the pills were hydrocodone. Additionally, the liquid substance removed from the floorboard of the car contained codeine.

### AUGUST 2006

Trevor Marshall testified that on August 7, 2006, the Defendant stopped at his home and asked if wanted to make some money. At that time, the Defendant referenced going out of town. Marshall agreed to go with the Defendant. While driving along Interstate 49, the Defendant informed Marshall that he was going to Texas to buy a large quantity of drugs.[1] Marshall, the Defendant, the Defendant's girlfriend, Laquandra Franklin,[2] a man called Diablo, and the Defendant's brother, Danny Ray, eventually ended up in Texas City, Texas, where they checked into a

---

[1]Marshall had a prior conviction for possession of CDS Schedule II, cocaine. Marshall testified that while the Defendant was at his residence, the Defendant stated that he had just left court where he had gotten an injunction or restraining order against the police department. Horn testified that a "motion to Prohibit Law Enforcement Contact" was filed by the Defendant on August 8, 2006.

[2]Franklin testified at trial; however, the jury was instructed to disregard her testimony.

hotel. Marshall testified that the Defendant left the hotel room at 4:00 a.m. and returned between 6:00 and 6:30 a.m. At that time, the Defendant told Marshall it was time to go, handed him a phone, and told him to drive the Grand Marquis (Defendant's car). Marshall testified that while driving along Interstate 10, he was stopped by police. Marshall refused consent to search the Grand Marquis, but a drug-sniffing dog alerted on the trunk of the car where police found several bales of marijuana.

Marshall testified that he informed police that the drugs were to be delivered to Larry Johnson in Opelousas. Marshall and the police then went to an annex building in Beaumont, Texas, where police removed the marijuana from the Grand Marquis and placed it in another vehicle, a Trail Blazer. Marshall and the drugs were transported to Opelousas in the Trail Blazer. Police followed in the Grand Marquis.

Marshall testified that once in Opelousas, he lied to the police and told them that he received a phone call in which he was instructed to bring the drugs to Alexandria. Police followed Marshall to Forest Hill, and then the group proceeded to Alexandria. Marshall testified that while he was between Opelousas and Forest Hill, he called his cousin, Elbert Sherman, and told Sherman that he had marijuana. Marshall further testified that he then devised a plan to leave the Grand Marquis at an apartment complex and have Sherman pick up the marijuana. Marshall subsequently called Sherman to tell him that the Grand Marquis would be at the Bayou Rapides Apartments in Alexandria. Marshall then dropped the Grand Marquis off at the apartment complex and met the police at a pawn shop nearby.

Marshall testified that Sherman approached the Grand Marquis while it was parked at the apartment complex, but called him and stated that he did not feel safe

5

moving the marijuana at that location. Marshall subsequently suggested that the Grand Marquis be moved to a car wash. Marshall testified that he drove the Grand Marquis to the car wash and was later met there by Sherman and Oliver Deal. Marshall further testified that Sherman still felt uncomfortable, so the group agreed to meet at a home located on Morgan Street. Once at the Morgan Street residence, the group began transferring marijuana from the Grand Marquis to Deal's car. Police arrived during the transfer, and Marshall, Deal, and Sherman were arrested. Marshall testified that the following day, he told Drug Enforcement Administration (DEA) Agent, Scott Wright, that the marijuana belonged to the Defendant.

Marshall testified that he did not tell Agent Wright the complete story, that he did not tell him about a stop the group made at Auto Zone in Oakdale, and that he did not give the names of all persons who went to Texas. Marshall testified that he eventually told Detective Horn the truth.

Detective Horn testified that Agent Wright was contacted by the sheriff's department in Benton, Texas, and was told that Marshall was arrested for possession of six bales of marijuana and that police intended to have Marshall deliver the marijuana. DEA agents transported Marshall to Lecompte, Louisiana, and the group formulated a plan wherein Marshall would drive the Grand Marquis to the Bayou Rapides Apartments, and Larry Johnson was to take possession of the Grand Marquis. Detective Horn confirmed that Marshall drove the Grand Marquis to the apartment complex between 4:30 and 5:00 p.m., left it there, and joined police.

Police surveillance revealed a black male approach the car, open the trunk and close it, then leave. Next, a Chevrolet Caprice, which belonged to Sherman, drove near the car then left. Detective Horn subsequently informed police that the pickup

6

location had changed. The car was then moved to the Metro Car Wash. Detective Horn testified that two vehicles subsequently arrived at the car wash, and three black males approached the Grand Marquis and looked inside the trunk. Marshall then called the police and informed them that the Grand Marquis was being taken to a residence on Richard Street[3] where the marijuana would be loaded into a Chevrolet Caprice. Police subsequently arrived at the residence, saw the marijuana being moved from the Grand Marquis to the Chevrolet Caprice, and arrested Marshall, Sherman, and Deal.

Detective Horn testified that Sherman and Deal informed him that they were called by Marshall around 2:30 or 3:00 p.m. and asked that day to help unload some marijuana. Sherman and Deal indicated that they did not know Marshall had picked up the marijuana in Texas.[4]

Agent Wright interviewed Marshall the day following his arrest. At that time, Marshall informed Agent Wright that Larry Johnson did not exist and that the marijuana belonged to the Defendant. Marshall explained that the Defendant stopped at his residence, told Marshall he was going to Houston to pick up drugs, and offered to pay Marshall $1,500.00 to drive a car back from Texas. Marshall further informed Agent Wright that he, the Defendant, and a girl named Tisha left at approximately 1:00 p.m. and drove to Texas City, Texas, where they stayed at a Day's Inn. The Defendant then left the hotel room in the early morning and returned at approximately 6:10 a.m. Marshall further stated that shortly after 8:00 a.m., the Defendant gave him the keys to a Grand Marquis and told him to drive to Alexandria. Marshall was

---

[3]Although he testified that it was Richard Street, Detective Horn stated that he could have been mistaken about the name of the street.

[4]Detective Horn's testimony was corroborated by Detective Juan Cruze and Agent Wright.

7

stopped by police in Beaumont, Texas. Marshall indicated that he called Deal and Sherman to help move the marijuana because the Defendant had been following him and knew that he had been stopped by police.

Detective Horn prepared an arrest warrant for the Defendant on August 16, 2006. As a result of statements made by Marshall, Detective Horn went to the Auto Zone in Oakdale on November 7, 2006 and interviewed several employees. The store manager identified Marshall, the Defendant, and Danny Holmes from photographic lineups.

Marcus Ayala, the manager of Auto Zone, testified that between August 7 and 10, 2006, a group came to the door of the store after it was closed, banged on the door, and said they needed a headlight.

The lab report admitted as State Exhibit 26 indicated that the samples that were taken from each bale seized by the police contained marijuana.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note that there is one error patent.

The bill of information filed herein contains an error in the citation for possession with intent to distribute hydrocodone. The bill erroneously refers to "La.R.S. 40:968A1G" as the citation for this offense. The correct citation for this offense is La.R.S. 40:968(A)(1).

Louisiana Code of Criminal Procedure Article 464 states:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or

8

its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

There is nothing in the record indicating that this citation error misled the Defendant to his prejudice. There is no subparagraph (G) under subsection (A)(1) of La.R.S. 40:968, and the elements of the crime, which are correctly set forth in the bill, are contained in subsection (A)(1). Neither the minutes nor the pleadings indicate that the Defendant alleged any prejudice. Accordingly, we find this error to be harmless. *See State v. Poche*, 05-1042 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225 and *State v. Roberts*, 06-765 (La.App. 3 Cir. 1/17/07), 947 So.2d 208, *writ denied,* 07-362 (La. 10/5/07), 964 So.2d 938.

### ASSIGNMENT OF ERROR NO. 1 and *PRO SE* CLAIM NOS. 2, 3, 6, 7, & 8

In his first assignment of error, the Defendant contends that there was insufficient evidence to prove his guilt beyond a reasonable doubt for the offenses of: possession of CDS Schedule V, codeine; possession with intent to distribute CDS Schedule III, hydrocodone; obstruction of justice; possession of CDS Schedule I, marijuana; and conspiracy to distribute CDS Schedule I, marijuana. In his second *pro se* claim, the Defendant contends that there was no direct or circumstantial evidence that he placed pills in the backseat of Officer Beamon's police car. In his third *pro se* claim, the Defendant contends that the pills should have been tested through chemical analysis. In his sixth *pro se* claim, the Defendant contends that none of the evidence regarding the liquid substance tended to prove that he possessed anything illegal. In his seventh *pro se* claim, the Defendant contends that he was not in possession of any drugs. In his eighth *pro se* claim, the Defendant contends that the testimony of Marshall and Detective Horn was not sufficient to support his

9

convictions. As assignment of error number one and Defendant's *pro se* claims numbers two, three, six, seven, and eight set forth herein relate to the sufficiency of the evidence presented by the State, we will address them collectively.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; *see State v. Neal*, 2000-0674 p. 9 (La.6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La. R.S. 15:438 works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Neal*, 2000-0674 p. 9, 796 So.2d at 657.

*State v. Draughn*, 05-1825, p. 7 (La. 1/17/07), 950 So.2d 583, 592, *cert. denied*, ___ U.S. ___, 128 S.Ct. 537 (2007).

### *COUNT I - POSSESSION OF CDS SCHEDULE V, CODEINE*

The Defendant was convicted of possession of codeine. The Defendant asserts that, during closing argument, defense counsel conceded that the State had proven the Defendant possessed codeine.[5] Thus, his sufficiency arguments were limited to counts II, IV, V, and VI. However, in his *pro se* brief, the Defendant asserts that testimony regarding a substance being poured out was hearsay, and "[n]one of the evidence alleged as to the liquid substance tends to prove the defendant possessed

---

[5]Defense counsel stated the following in closing arguments:

[I]f I were this jury I'd probably convict Mr. Carter of possession of Codeine myself. I mean, he was the only one in the car, they -- they proved it was Codeine, and I'm not going to argue about that. I mean, I'm not telling you to vote that way. Certainly, I'm not telling you to vote that way, but that's reasonable, all right, just as it was reasonable to believe that the Codeine got knocked over.

anything illegal." The Defendant additionally asserts that he did not possess any drugs and was not arrested in any vehicle that contained any illegal substance. Based on the Defendant's assertions in his *pro se* brief, we will review whether the evidence presented by the State was sufficient to support the Defendant's conviction for possession of CDS Schedule V, codeine.

Given this charge, the State was required to prove that the Defendant possessed codeine and that he did so knowingly or intentionally. La.R.S. 40:970. The State was also required to prove guilty knowledge, "*i.e.*, . . . that an accused is aware of the illegal drugs in his possession." *State v. Davis*, 05-543, p. 8 (La.App. 3 Cir. 12/30/05), 918 So.2d 1186, 1192, *writ denied*, 06-587 (La. 10/13/06), 939 So.2d 372. "However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances." *State v. Major*, 03-3522, pp. 8-9 (La. 12/1/04), 888 So.2d 798, 803 (citation omitted).

Officer Beamon scraped a substance from the floorboard of the Defendant's car and placed it in a Styrofoam cup. Officer Beamon testified that he believed that the substance was hydrocodone syrup, a commonly prescribed cough medication. King, a forensic chemist, testified that the liquid substance removed from the floorboard of the car contained codeine.

In its opening statement, the State asserted that the Defendant poured the syrup from a cup onto the floorboard of the car when he was pulled over by police. Officer Beamon attempted to testify that Corporal Woodstein saw the Defendant "dump" something, but defense counsel objected to that testimony, and the State agreed to proceed "in a different way." Detective Horn testified that, "I was radioed, saying that they had taken Archie Carter down, and a liquid something was -- was being

11

poured out or something . . . ." However, defense counsel objected to that testimony on the basis of hearsay, and the objection was sustained. Accordingly, the State did not put on any direct evidence regarding how the syrup came to be on the floorboard, that the Defendant knew the syrup was on the floorboard, or that the Defendant knew the syrup contained codeine. Thus, the State had to prove, through circumstantial evidence, that the Defendant knew the syrup contained codeine.

In *State v. Burbank*, 07-125 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173 the defendant was convicted of possession of cocaine within 1,000 feet of a drug-free zone. The defendant asserted that the State failed to prove that he knowingly possessed cocaine. The court found that there was evidence from which a reasonable juror could have concluded that the defendant knowingly possessed cocaine. The defendant was the sole occupant of the car in which cocaine was found in plain view on the center console between the driver's seat and the passenger's seat. Further, police testified that upon their approach, the defendant exited the driver's side of the vehicle and attempted to flee.

In *Burbank*, the court cited *State v. Wright*, 05-477 (La.App. 5 Cir. 12/27/05), 920 So.2d 871, *writ denied*, 06-1141 (La. 2/16/07), 949 So.2d 404. In *Wright*, the court concluded that the defendant had constructive possession of cocaine found in plain view in the center console of the vehicle he was driving, despite the fact that he did not own the vehicle. The court also found that the evidence was sufficient to show guilty knowledge of the cocaine found in plain view in the car, noting that the cocaine was next to the stick shift. The court also cited *State v. Christopher*, 561 So.2d 935 (La.App. 2 Cir.), *writ denied*, 567 So.2d 1124 (La.1990), wherein the second circuit found that there was sufficient evidence of guilty knowledge after

12

noting that one would expect the defendant to have noticed the cocaine while driving the vehicle since the officer readily noticed the cocaine in plain view in the middle of the night. The court went on to cite *State v. Williams*, 01-644 (La.App. 5 Cir. 11/27/01), 802 So.2d 909, in which it found that the defendant knowingly possessed cocaine found in plain view in the cupholder on the console of the car he was driving, even though the car belonged to another person. The court noted that upon seeing police, the defendant sped up, parked, exited the car, walked into a nearby store after making eye contact with the police, and disappeared from sight. The court concluded that the defendant's attempt to avoid apprehension supported the inference of knowledge of the cocaine.

However, the case at bar is distinguishable from *Burbank* and the cases cited therein in that the case at bar involved a syrup which may not be as readily visible as cocaine. We note that the record does not contain a detailed description of the syrup, any testimony regarding whether the syrup was visible from the Defendant's position in the car at the time of his arrest, or any testimony as to the amount of syrup found on the floorboard. We additionally note that the State failed to present any evidence of furtive behavior on the part of the Defendant. There is simply no evidence that the Defendant knowingly possessed codeine. Accordingly, the Defendant's conviction for possession of codeine is reversed, and a judgment of not guilty is entered.

### COUNT II - POSSESSION WITH INTENT TO DISTRIBUTE CDS SCHEDULE III, HYDROCODONE

The Defendant was convicted of possession with intent to distribute hydrocodone. Given this charge, the State was required to prove beyond a reasonable doubt that the Defendant knowingly or intentionally possessed hydrocodone and that he had the specific intent to distribute the hydrocodone.

The pills at issue were found under the backseat of Officer Beamon's police car after he brought the Defendant into the Narcotics Division. The Defendant asserts that his person was searched three times before he was placed in the police car, and the police found nothing. The Defendant alleges that Officer Cooper testified that he had "been through" the Defendant's pockets and that Detective Horn had searched the Defendant and that no drugs were found. Further, there was no testimony that the Defendant was moving around or acting suspiciously while inside the police car. The Defendant asserts that for the State's theory to be believed, he "must have been riding around with the pills stored in his rectal area and that he deposited the pills into the back seat of the patrol car while he was being transported." The Defendant further asserts that the pills were not subjected to a proper chemical analysis to determine whether they contained hydrocodone; and, therefore, the State failed to prove that the pills were a controlled dangerous substance. We will first address whether the State proved that the pills at issue contained hydrocodone.

### Analysis of the Hydrocodone Pills

King, who was accepted as an expert in forensic chemistry, testified that the green pills found by police contained hydrocodone. The pills were identified via visual inspection and comparison with pictures in a book. No chemical analysis was performed. Detective Horn testified that he had seen similar pills in the past as part of his job and that the pills at issue were hydrocodone pills.

In *State v. Harris*, 02-1589 (La. 5/20/03), 846 So.2d 709, the State argued that the court of appeal erred in finding that it did not submit sufficient evidence of attempted cocaine possession to support the jury's verdict. The State asserted that even though it failed to introduce the crime lab report that indicated that the substance

14

that the defendant sold was cocaine, that there was sufficient evidence presented to prove that the defendant was guilty of attempted possession with intent to distribute cocaine. The supreme court stated the following in its opinion:

> There is ample jurisprudence to support the state's position. In one such case, cited by the state, *State in the Interest of J.W.*, 597 So.2d 1056 (La.App. 2 Cir.1992), defendant, J.W., was convicted of possession of cocaine with the specific intent to distribute in violation of La. R.S. 40:967. The state was required to prove the identity of the drug as cocaine, an essential element of the charged offense. *State in the Interest of J.W.*, 597 So.2d at 1058 (citing *State v. James*, 517 So.2d 291 (La.App. 1 Cir.1987); *State v. Guillory*, 447 So.2d 1214 (La.App. 5 Cir.1984)). The state failed to produce a laboratory report or the results of a chemical test which would have proved the exact nature of the suspected contraband. The second circuit concluded that the evidence was thus insufficient to support an adjudication of delinquency on the basis that the defendant had committed the charged offense.
>
> Nevertheless, the court in *J.W.* went on to consider whether the evidence was sufficient to support a finding of *attempted* possession in the absence of scientific proof that a controlled dangerous substance was actually involved, *i.e.* without a chemical analysis of the substance. The court found that the evidence clearly showed that J.W. subjectively believed that the substance in his possession was cocaine, that the substance was packaged like cocaine, and that his statements following his arrest were evidence that he intended to distribute the substance. *State in the Interest of J.W.*, 597 So.2d at 1059. . . .
>
> The court in *J.W.* based its decision on federal jurisprudence interpreting analogous federal drug statutes, 21 U.S.C. § 841(a), § 846. The federal courts subscribe generally to the view that the "government need not introduce scientific evidence to prove the identity of a substance . . . as long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal." *United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir.1990). Identification of a controlled substance does not require direct evidence if available circumstantial evidence established its identity beyond a reasonable doubt. *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984). This circumstantial evidence can include "lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug; and behavior characteristic of sales and use such as testing, weighing, cutting and peculiar ingestion." *Harrell*, 737 F.2d at 978, (citing *United States v. Sanchez*, 722 F.2d 1501, 1506 (11th Cir.1984);

15

*United States v. Crisp*, 563 F.2d 1242, 1244 (5th Cir.1977); *United States v. Quesada*, 512 F.2d 1043, 1045 (5th Cir.1975)). Identification based upon familiarity through law enforcement coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance. *Harrell*, 737 F.2d at 978-979.

*Id*. at 713-14. *See also State v. Chatman*, 599 So.2d 335 (La.App. 1 Cir. 1992).

In *Sterling v. State*, 791 S.W.2d 274 (Tex.App. 1990) (en banc), the defendant attacked the sufficiency of the evidence presented at his probation revocation hearing. The defendant possessed what was believed to be twelve diazepam or valium tablets at the time he encountered police. He argued that the evidence was insufficient to prove that he possessed diazepam or valium. At the hearing, a pharmacist testified that the tablets were diazepam or valium based on their appearance and markings. He further testified that it was part of his profession to identify medication which the Texas Controlled Substances Act requires to be dispensed by prescription and that he had dispensed these pills through his pharmacy. The State did not introduce a chemical analysis of the tablets. The court found that the evidence was sufficient to support the trial court's finding, stating, "[a] person who is familiar with a substance may identify it. An expert may identify a controlled substance without chemical analysis." *Id*. at 277 (citations omitted).

We find there was sufficient lay and expert testimony from which the jury could find beyond a reasonable doubt that the pills at issue were identified as hydrocodone.

***Possession of the Hydrocodone Pills with the Intent to Distribute***

The Defendant was charged with possession with intent to distribute hydrocodone. Thus, the State was required to prove beyond a reasonable doubt that the Defendant intentionally possessed hydrocodone and that he had the specific intent

16

to distribute hydrocodone.  La.R.S. 40:968(A).

> [Defendant's] intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to reasonable inferences of intent to distribute.  *State v. Ramoin*, 410 So.2d 1010 (La.1981); *State v. Williams*, 457 So.2d 902 (La.App. 3rd Cir.1984), *writ denied*, 461 So.2d 313 (La.1984).  In *State v. House*, [325 So.2d 222 (La.1975)], the court enumerated several factors from which the intent to distribute may be inferred.  Those factors include evidence:
>
> (1) that the defendant ever distributed or attempted to distribute any [of the drug];
>
> (2) that the [drug] was in a form usually associated with [drug] possessed for distribution to others;
>
> (3) that the amount was such as to create a presumption of intent to distribute;
>
> (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only;  and
>
> (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
>
> *State v. Segura*, 546 So.2d 1347, 1350 (La.App. 3 Cir.1989);  *see also State v. Hearold*, 603 So.2d 731 (La.1992) (footnote omitted).
>
> Intent, like any other fact may be proved by circumstantial evidence.  La.R.S. 15:445.  This is evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred.

*State v. Durgan*, 05-1642, pp. 7-8 (La.App. 3 Cir. 5/31/06), 931 So.2d 1182, 1187.

In support of its case, the State offered the testimony of several police officers. Officer Beamon testified that the Defendant was handcuffed behind his back while inside the police car, but that it was not impossible for the Defendant to remove drugs from his person and hide them.  Officer Beamon further testified that after every arrest he made, he checked under the backseats, because people hide drugs in that

17

location.  Additionally, Officer Beamon testified that he searched the backseats of his car after the arrest that occurred just prior to that of the Defendant.  On cross-examination, Officer Beamon was questioned about whether other people had access to his police car.  He testified that while he was at the Narcotics Division, other police officers had access to his car and that he was inside the building for approximately thirty minutes.  Officer Beamon further testified that it had probably been several days since he searched the backseat of his car, as he usually rides with another officer.  When his car was not in use, it was parked at his home or the back lot of the police department.  Officer Beamon testified that the car was locked during those times and that other people would not have access to his car.  Detective Horn testified that he has failed to detect drugs on a person during a pat down in the past and that it was not uncommon for people to attempt to hide contraband in a police car while they were being transported to jail.

Corporal Cooper testified that the pat down he conducted consisted of quickly checking the waistline of the Defendant and from his ankles to his armpits.  Corporal Cooper indicated that he did not run his hands "through the back" of the Defendant's crotch during the pat down.  Corporal Cooper further testified that he did not generally find things that were secreted in a private area.  He testified that it was fairly common to find contraband in the back of a police car even though suspects are handcuffed when placed in the car.  Corporal Cooper further testified that before placing someone in the car, the backseat is lifted and the area is checked for contraband.  Corporal Cooper additionally testified that if the pills found in the police car were secreted in the rectal area, he would not have detected them in a pat down.  Additionally, he stated that he had failed to detect such things in the past during a pat

18

down.

We note that Corporal Cooper testified that "I don't go generally into his pockets. I may run my hand over them." Accordingly, the Defendant's assertion that Corporal Cooper went into the Defendant's pockets is incorrect. Detective Horn testified that he removed $745.00 dollars from one of the Defendant's front pockets; however, he did not indicate when this occurred.

In *State v. Lee*, 06-941 (La.App. 3 Cir. 4/18/07), 957 So.2d 220, *writ denied*, 07-1538 (La. 1/11/08), 972 So.2d 1163, police found marijuana and cocaine in the backseat of the police car. At issue was whether the defendant intentionally possessed the drugs. Officer Hollins testified that he visually checked his patrol car prior to transporting the defendant to the police station. He further testified that he saw the defendant "wiggling" and moving around while in the back seat of the car. Officer Hawkins explained that he also saw the defendant "moving around" in the car. This court found the following:

> As the marijuana and cocaine were found on the backseat where, according to Officer Hollins, only the defendant had been and where he had been observed to be moving about, we find that the evidence was sufficient to support a determination that the defendant intentionally possessed both the cocaine and the marijuana. *See State v. Major*, 03-3522 (La.12/1/04), 888 So.2d 798 (wherein the supreme court explained that possession can be established by either actual physical possession or by constructive possession. The State can establish the latter by demonstrating that the defendant had dominion and control.).

*Id*. at 222.

Based on *Lee*, we find that the evidence was sufficient to prove beyond a reasonable doubt that the Defendant intentionally possessed the hydrocodone found in the backseat of Officer's Beamon's police car.

We will now address whether the Defendant had the specific intent to distribute

19

the thirteen hydrocodone pills found in Officer Beamon's police car.

In *State v. Ratliff*, 35,144, pp. 9-10 (La.App. 2 Cir. 9/26/01), 796 So.2d 101, 107, the second circuit held that the presence of large sums of cash is considered circumstantial evidence of intent to distribute.

In the present case, the State presented testimony that the Defendant had two prior convictions for possession of CDS Schedule II, two prior convictions of possession of CDS Schedule V, and one prior conviction for possession with intent to distribute CDS Schedule I. Additionally, he had $745.00 dollars on his person at the time of his arrest. Detective Horn testified that the thirteen pills had a total street value between $65.00 and $130.00

Thus, the jury could readily infer that the Defendant had the specific intent to distribute hydrocodone. We find that the circumstantial evidence presented by the State in this case is sufficient to support the charged offense. Therefore, this claim is without merit.

### COUNT IV - OBSTRUCTION OF JUSTICE

The Defendant argues that if the State failed to prove that he possessed the alleged hydrocodone pills or that the pills contained hydrocodone, he is not guilty of obstruction of justice. As we have determined that the pills possessed by the Defendant were hydrocodone, we find that this claim lacks merit.

### COUNT V - POSSESSION OF CDS SCHEDULE I, MARIJUANA, IN AN AMOUNT GREATER THAN SIXTY POUNDS BUT LESS THAN TWO THOUSAND POUNDS

The Defendant was convicted of possession of marijuana in an amount greater than sixty pounds but less than two thousand pounds. Given this charge, the State was required to prove that the Defendant knowingly or intentionally possessed

marijuana in an amount greater than sixty pounds but less than two thousand pounds. La.R.S. 40:966. The Defendant asserts that the State presented no evidence that he actually or constructively possessed marijuana while in Rapides Parish.

In *United States v. Singh*, 811 F.2d 758, 761 (2nd Cir. 1987), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3264 (1987), the court stated the following:

> [*United States v.*] *DeBerry* [487 F.2d 448 (2d Cir.1973),] teaches that in a typical "controlled delivery" case, the validity of the seizure is determined as of the time the drugs are first seized, not as of the time they are retaken. Having taken proper dominion over the drugs and kept them under close surveillance, the government is deemed to be in constructive possession of them, even though, for purposes of identification, they are delivered to another. Other Circuits are in accord. *See, e.g., United States v. Bulgier*, 618 F.2d 472, 478 (7th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 51 (1980); *United States v. Andrews*, 618 F.2d 646, 654 (10th Cir.), *cert denied*, 449 U.S. 824, 101 S.Ct. 84, 66 L.Ed. 26 (1980); *United States v. Ford*, 525 F.2d 1308, 1312-13 (10th Cir.1975); *United States v. Issod*, [508 F.2d 990, 933 (7th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1578 (1975)]; *see also United States v. Emery*, 541 F.2d 887, 890 (1st Cir.1976). This means, says the Supreme Court, that "[n]o protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal." *Illinois v. Andreas*, [463 U.S. 765, 771, 103 S.Ct. 3319, 3324].

> Of course, in order for a controlled delivery to accomplish its intended purpose, there must be an actual delivery to a defendant and sufficient exercise of dominion by him to demonstrate his participation in the unlawful importation of the narcotics in question.

In *United States v. Ford*, 525 F.2d 1308 (10th Cir. 1975), a woman dropped off a package to a freight agent for American Airlines in San Francisco. When asked about the contents of the package, the woman became nervous and stated that she did not know what the contents were. She later said that the package contained a gift. Apprehensive that the package might contain matter not eligible for shipment, airline officials opened it. The package contained eight prophylactics containing a powdered substance. Airline officials called police, who conducted a field test of the substance

21

and determined that it was heroin. Police marked the package, placed a business card inside it, and released it for shipping. The package arrived in Oklahoma City and was picked up by the defendant. Police subsequently arrested the defendant. The defendant challenged the search, arrest, and seizure process in San Francisco and Oklahoma City. The court found that official seizure of contraband occurred in San Francisco when the government asserted dominion over it.

The bales of marijuana at issue in the case at bar were purchased in Texas City, Texas, were seized by police in Beaumont, Texas, and then transported to Opelousas and Alexandria, Louisiana. The Defendant had constructive possession of the marijuana prior to the time it was seized by police in Texas. Once the police seized the marijuana, the police had dominion and control over it. The Defendant never had contact with Marshall or the marijuana once the marijuana was transported to Louisiana. Therefore, the Defendant never had dominion and control over the marijuana in Rapides Parish and did not have possession of the marijuana in Rapides Parish. Accordingly, the Defendant's conviction for possession of marijuana in an amount greater than sixty pounds but less than two thousand pounds is reversed, and his sentence for this offense is vacated.

## COUNT VI - CONSPIRACY TO DISTRIBUTE CDS SCHEDULE I, MARIJUANA

The Defendant asserts that evidence regarding a conspiracy came solely from Marshall, who had a previous conviction for possession of cocaine. The Defendant further asserts that Marshall's testimony was an attempt to serve up what he thought was a large player in order to obtain leniency for himself. The Defendant additionally contends that the marijuana was never "tied" to him.

The Defendant was convicted of conspiracy to distribute marijuana.

22

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

La.R.S. 14:26.

> An essential element of the crime of conspiracy is specific intent. *State v. Guillory*, 540 So.2d 1212 (La.App. 3 Cir.1989). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequence to follow. As a question of fact, intent may be inferred from the circumstances of the actions of the offender. See La.R.S. 14:10(1) and *State v. Valrie*, 99-226 (La.App. 3 Cir. 10/13/99); 749 So.2d 11, *writ denied*, 99-3236 (La.4/20/00); 760 So.2d 343.

*State v. Johnson*, 01-1084, pp. 6-7 (La.App. 3 Cir. 2/6/02), 817 So.2d 120, 125.

The Defendant went to Marshall's apartment, and the Defendant said, "I understand that you really want to do your music, and I have a way that I can pay you some money for you to do it, if you feel like doing me a favor also." Marshall testified that the Defendant was speaking about going out of town. Subsequently, while driving on Interstate 49 toward Opelousas, the Defendant told Marshall he was going to purchase three hundred pounds of "weed," twenty bricks of cocaine, and forty-nine gallons of promethazine with codeine. Marshall testified that at that time, "it just dawned on me, like I really don't want to go if all that's going to be involved." The following exchange then occurred between the State and Marshall:

> Q. And you knew when you got in the car, now, honestly, tell me, you didn't think you were going to sell Boy Scout cookies in -- in Houston?
>
> A. Oh, no, sir -- no, sir.
>
> Q. Okay. You knew it was going to probably involve drugs?
>
> A. Yes, sir.

23

Q.   But what -- what made you kind of a little nervous, the amount?

A.   The -- the amount.

. . . .

Q.   All right. So, what happens the, I mean, he -- he explains to you how it's going to go down or he just gives you a general description or what?

A.   He just -- it was more of a description.

Eventually, the group, which consisted of the Defendant, Marshall, Franklin, Diablo, and Danny Ray, ended up at a hotel in Texas City, Texas. Marshall pretended to sleep, and the Defendant left the hotel room at 4:00 a.m. and returned between 6:00 and 6:30 a.m. When the Defendant returned to the room, the Defendant threw Marshall the keys to a car, gave him a phone, and instructed Marshall to follow him in the car. Marshall testified that he knew that there would be drugs in the car, but not exactly what type of drugs and that he would get paid for "doing it." Agent Wright testified that Marshall told him that the Defendant stopped at his residence, told Marshall he was going to Houston to pick up drugs, and offered to pay Marshall $1,500.00 to drive a car back from Texas.

In *State v. Butler*, 93-1317 (La.App. 1 Cir. 10/7/94), 646 So.2d 925, *writ denied*, 95-420 (La. 6/16/95), 655 So.2d 340, the defendant was convicted of possession of over 400 grams of cocaine and conspiracy to distribute cocaine. The cocaine at issue was sent to Baton Rouge from Compton, California, through the United Parcel Service (UPS). A UPS employee testified that he was called to inspect a package that had been shipped without a complete address. The package was suspicious, so police were called and a field test on the contents of the package was performed. The test indicated that the package contained cocaine.

24

A woman subsequently called UPS and asked about the package, but refused to give her name. UPS received a second call about the package, and, again, the caller would not leave his name. The man called back forty-five minutes later and gave an apartment number that the package could be delivered to. The package was delivered, and a male in the apartment signed for the package. After transfer of the package, the man, Tyrone Gaines, was arrested. Gaines later informed police that he was dropped off at the apartment by a black male who had offered him $300.00 to $400.00 to accept delivery of the package.

The court found that the evidence was sufficient to establish that the defendant intended Gaines to distribute or deliver the package to him. The court noted that a UPS employee testified that she helped the defendant trace and attempt to obtain possession of a package that contained cocaine. According to Gaines's statement at arrest, the defendant offered him money to sign for the package and deliver it to the defendant. Additionally, the defendant was in the parking lot where Gaines signed for delivery of the package during, or immediately after, that transaction and was seen walking to the building where Gaines was to obtain the package.

According to Marshall, the Defendant recruited him, planned the trip, purchased drugs in Texas, and intended for Marshall to bring the drugs from Texas to Alexandria. It is clear from the evidence that the jury could conclude that Marshall was to deliver the drugs to the Defendant once Marshall returned to Alexandria. Therefore, the Defendant's conviction for conspiracy to distribute marijuana is affirmed.

The Defendant attacks the credibility of Marshall. However, the jury's verdict indicates that it chose to believe Marshall's testimony and that credibility

25

determination should not be second-guessed by this court. *State v. Marshall*, 04-3139 (La. 11/29/06), 943 So.2d 362, *cert. denied*, ___ U.S. ___, 128 S.Ct. 239 (2007). Therefore, this claim lacks merit.

## ASSIGNMENT OF ERROR NO. 2 AND *PRO SE* CLAIM NO. 4

In his second assignment of error and fourth *pro se* claim, the Defendant contends that the trial court erred in allowing the admission of other crimes evidence.

On April 13, 2007, the State filed a "Memorandum in Support of Use of 404(B) Evidence." Therein, the State sought to introduce evidence of the Defendant's prior drug convictions. A hearing regarding the matter was held on April 16, 2007, at which time the following exchange occurred:

BY MR. LAMBERT(sic):

. . . I think there's no question that it[']s admissible anyway. In this case, knowledge is the absolute key. Of course we have no objection to a limiting instruction, with regards to those prior convictions. . . .

BY THE COURT:

All right, Mr. Armitage, what's your position on the use of 404B evidence?

BY MR. ARMITAGE:

I don't want to use it.

BY THE COURT:

I know that, but what's your legal reasons?

BY MR. ARMITAGE:

I would request a limiting in the instruction if you allow it, Your Honor, I think that these - -

. . . .

26

BY MR. ARMITAGE:

> - - As far as knowledge, I'm not sure knowledge, but certainly I think that identity is a problem here, so. I mean, what is knowledge? So, I've got to concede that I think that he'd probably win it, and, I would reserve any objections that I may have as being in violation of every constitution that we have.

The trial court later granted the State's motion to use other crimes evidence, and defense counsel made the following remarks: "Submit to Your Honor's ruling, we respectfully object."

In brief to this court, the Defendant states there was no transcript of the hearing regarding the use of evidence under La.Code Evid. art. 404(B) in the record and asserts that the State failed to show that the prior convictions had any probative value to the charged offenses.[6] Additionally, the prejudicial effect of the evidence at issue was further shown by its placement at trial, as the first witness presented by the State testified regarding the Defendant's prior convictions.

In his *pro se* brief, the Defendant contends the following:

> Consider the old Code of Criminal Procedure as being a conscious desire to admitting other acts of misconduct; the trial court failed and compounded by the prosecutors inevitable behavior to justify irrespective to guilt or not. Further, the state never proved any similar acts. None that were independent of the act charged when considering the amended bill of information. Possession with intent to Distribute, Conspiracy to Distribute. Reason that the intent is a question of fact, that which inferred from circumstances of the alleged transaction, which none existed. Therefore, the state's evidence can not satisfy a rational trier of facts that the defendant possessed or intended to distribute. Actually the state's own acts shows there exists a conspiracy to obtain a conviction at any cost, by any means.

These claims by the Defendant cannot be addressed by this court. Defense counsel objected to the trial court's ruling, asserting it was in violation of the

---

[6]The transcript of the hearing at issue was requested by this court and submitted in a supplemental record.

constitution. He did not assert that the other crimes evidence had no probative value or that the introduction of such evidence was prejudicial. These legal arguments cannot be made for the first time on appeal. Uniform Rules—Courts of Appeal, Rule 1–3. Therefore, this assignment of error and the *pro se* claim will not be considered as they are not properly before the court. *State v. Perkins*, 07-423 (La. 10/31/07), 968 So.2d 1178.[7]

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the Defendant contends that the trial court erred in denying his motion for mistrial.

During the testimony of Bridgette Brown, defense counsel asked Ms. Brown whether she had received a complaint from the Defendant in her capacity as Magistrate for the City of Boyce. The State objected on the basis of hearsay and stated, "if Mr. Archie Carter wants this jury to know something - -." Defense counsel then objected and asked for a mistrial, although he did not state the basis for his objection or motion for mistrial. The objections were sustained, and the motion for mistrial denied. Defense counsel then objected to the trial court's ruling on the basis that it was not allowing the Defendant to present a defense.

In brief to this court, the Defendant asserts that the State drew direct attention to his failure to testify in his own defense, and, because the reference was a direct reference, the motion for mistrial should have been granted without inquiry into the

---

[7]The Defendant filed a "Motion in Limine to Exclude 'Possible Testimonial Evidence,'" which the trial court granted. The Defendant asserts that the trial court's ruling granting the Defendant's motion to exclude testimonial evidence was contradictory to the ruling allowing the admission of other crimes evidence pursuant to La.Code Evid. art. 404(B). However, the trial court's rulings are not in conflict, as the Defendant's motion pertained to testimony that the Defendant had previously entered into a drug transaction with Marshall, that the Defendant burned down a house belonging to someone's grandmother, and that the Defendant threatened Marshall with respect to his testimony at trial.

State's intent. Additionally, if this court were to find that this was an indirect reference to the Defendant's failure to testify, a mistrial was still warranted.

Louisiana Code of Criminal Procedure Articles 770, 771, and 775 set forth several grounds upon which a defendant may move for a mistrial. At trial, the Defendant did not set forth the basis for his objection or motion for mistrial. Accordingly, because Defendant failed to articulate a basis for his motion, this assignment of error will not be considered on appeal. *State v. Giles*, 93-103 (La.App. 4 Cir. 6/15/94), 639 So.2d 323, *writs denied,* 94-1891, 94-1897 (La. 12/19/94), 648 So.2d 399, 400. *See also State v. Jackson*, 07-84 (La.App. 5 Cir. 6/26/07), 963 So.2d 432; *State v. Palmer*, 00-216 (La.App. 1 Cir. 12/22/00), 775 So.2d 1231, *writs denied*, 01-211, 01-1043 (La. 1/11/02), 807 So.2d 224, 229.

## ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the Defendant contends that the trial court erred in not allowing the testimony of Bridgette Brown.

The Defendant asserts that he attempted to introduce evidence, through the testimony of Ms. Brown, that the Defendant reported his Grand Marquis stolen prior to Marshall's arrest. However, the State objected to the testimony on the basis of hearsay, and the objection was sustained. The Defendant contends that the trial court erroneously sustained the objection, as Brown's testimony was not offered to prove the truth of the matter asserted, but to show why she acted in the manner she did. In support of his argument, the Defendant cites La.Code Evid. art. 801(C), which defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."

Ms. Brown testified that she was the Magistrate for the City of Boyce. She explained that when the police in Boyce were not available, she received complaints

29

from individuals and instructed them to follow up with the Chief of Police the next morning. Brown was then asked if she had received a complaint from the Defendant. At this point, the State objected. The remainder of Ms. Brown's testimony was proffered by the Defendant. In that proffer, Ms. Brown testified that she received a complaint from the Defendant that his car was "missing on unauthorized use." She then instructed the Defendant to make a complaint with the Rapides Parish Sheriff's Department and to make a complaint with the Chief of Police of Boyce the following morning. Brown did not know the date on which she received the complaint.

We note that the information which Brown testified about is comparable to that involving police investigations. The supreme court discussed the admissibility of such information in *State v. Broadway*, 96-2659, pp. 8-9 (La. 10/19/99), 753 So.2d 801, 809, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562 (2000), as follows:

> Information about the course of a police investigation is not relevant to any essential elements of the charged crime, but such information may be useful to the prosecutor in "drawing the full picture" for the jury. However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. *State v. Wille*, 559 So.2d 1321, 1331 (La.1990); *State v. Hearold*, 603 So.2d 731, 737 (La.1992). As this Court emphasized in *Hearold*, 603 So.2d at 737,
>
>> Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
>
> The prosecutor has some latitude to present a full picture because the jury may "penalize the party who disappoints them by drawing a negative inference against that party." *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 654, 136 L.Ed.2d 574 (1997). Reasonable jurors may expect to learn that the police did not arrest the defendant out

30

of thin air, but as the result of a thorough professional investigation.

We find that Ms. Brown could not testify as to the substance of the Defendant's complaint because that testimony would be offered to prove the truth of the matter asserted, *i.e*, that the Defendant reported his vehicle missing and, thus, would be considered hearsay. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 5 and *PRO SE* CLAIM NO. 9

In his fifth assignment of error, the Defendant contends that the sentences imposed are excessive for these offenses and this offender. In his ninth *pro se* claim, the Defendant contends his sentences are excessive. He additionally asserts that the jury did not hear any factors to consider for sentencing purposes, and the factors presented by the State were hearsay.

Since we have reversed the Defendant's convictions for possession of codeine, and possession of marijuana in an amount greater than sixty pounds but less than two thousand pounds, the issue of excessive sentence for those offenses is moot. We will, however, review the sentences imposed on the Defendant for possession with intent to distribute hydrocodone, obstruction of justice, and conspiracy to distribute marijuana.

The Defendant contends that he is not the most egregious offender and does not deserve the harsh sentences he received. The Defendant also asserts that the evidence did not support the following aggravating factors considered by the trial court: 1) that the Defendant used his position or status to facilitate the offense; and 2) that the Defendant was a leader, and his violation was in concert with one or more persons with whom the Defendant occupied a position as an organizer in a supervisory or management position. Further, the trial court considered the large amount of marijuana as an aggravating circumstance; however, the weight of the marijuana was

31

an element of the offense and should not have been considered at sentencing. The Defendant additionally asserts that he was twenty-four years old at the time of these convictions and that the trial court failed to consider that when imposing his sentences.

In his Motion to Reconsider Sentence, the Defendant did not make any argument regarding aggravating factors considered by the trial court or assert that the trial court failed to consider his age at sentencing. "Failure to . . . include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La.Code Crim.P. art. 881.1(E). Accordingly, the Defendant waived all claims regarding these allegations. Therefore, we will only address the Defendant's claim that his sentences for possession with intent to distribute hydrocodone, obstruction of justice, and conspiracy to distribute marijuana are excessive.

> The Eighth Amendment to the United States Constitution and La. Const. art. 1, § 20 prohibit the imposition of cruel or excessive punishment. "'[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.'" *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Nevertheless, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. "Maximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Davenport*, 07-254, pp. 3-4 (La.App. 3 Cir. 10/3/07), 967 So.2d 563, 565.

The sentencing range for possession with intent to distribute hydrocodone is

zero to ten years, and the Defendant was sentenced to serve five years for that offense.[8] La.R.S. 40:968. Thus, the Defendant received a midrange sentence on that conviction. The sentencing range for obstruction of justice is zero to five years, and the Defendant was sentenced to serve five years for that offense. La.R.S. 14:130.1. Thus, the Defendant received the maximum sentence on that conviction. The sentencing range for conspiracy to distribute marijuana is zero to fifteen years, and the Defendant was sentenced to serve ten years at hard labor for that offense. La.R.S. 14:26 and La.R.S. 40:966. Thus, the Defendant received an upper midrange sentence on that conviction.

At the sentencing hearing, the trial court noted that the Defendant had been convicted in 2002 of two counts of possession of CDS Schedule II, two counts of possession of CDS Schedule V, illegal carrying of a weapon with drugs, and possession with intent to distribute CDS Schedule I. Additionally, in 1998, the Defendant was convicted of simple escape. The court further noted that the Defendant had been booked into jail twenty-four times.

Based on the Defendant's criminal history, there is no legitimate argument that the trial court abused its discretion when imposing the sentences at issue. Furthermore, the Defendant's claim that the jury did not hear any factors to consider for sentencing is without merit as "[t]he jury determines guilty [sic] or innocence and, upon a verdict of guilt, the sentence is imposed by the court. La.C.Cr.P. Art. 871." *State v. Mallett*, 535 So.2d 400, 403 (La.App. 3 Cir. 1988). Accordingly, this assignment of error and the *pro se* claim lack merit.

---

[8]In brief to this court, the Defendant incorrectly states that he received the maximum sentence of five years for "possession of Schedule III narcotic." The Defendant was convicted of possession with intent to distribute CDS Schedule III, hydrocodone.

In his first *pro se* claim, the Defendant contends that the statement given to police by the alleged co-defendant, Trevor Marshall, and entered into evidence at trial, was unreliable and insufficient to corroborate the details of the offense that form the "basis for the conviction."

A review of the record reveals that there were no written or taped statements introduced into evidence at trial. However, Marshall, as well as several police officers, testified about his statements to the police. The jury heard the testimony of all of the witnesses in this matter and, based on the verdicts rendered, chose to believe Marshall's testimony. That credibility determination should not be second-guessed by this court. *Marshall*, 943 So.2d 362. Accordingly, this claim lacks merit.

## PRO SE CLAIM NO. 5

In his fifth *pro se* claim, the Defendant contends that Detective Horn's actions amounted to entrapment.

The Defendant neither asserted nor argued this affirmative defense at trial. A legal argument cannot be made for the first time on appeal. Uniform Rules—Courts of Appeal, Rule 1–3. Therefore, this *pro se* claim will not be considered, as it is not properly before the court. *Perkins*, 968 So.2d at 1178.

## PRO SE CLAIM NO. 10

In his tenth *pro se* claim, the Defendant contends that the reliability of the informant and the specificity of the tip were insufficient to provide reasonable suspicion to justify the initial stop of the vehicle.

This issue was not raised in any pre-trial motions or at the Defendant's trial and may not be raised for the first time on appeal. Uniform Rules—Courts of Appeal, Rule 1–3. Therefore, this *pro se* claim will not be considered, as it is not properly

before the court. *Perkins*, 968 So.2d at 1178.

**DECREE**

For the foregoing reasons, we reverse the Defendant's conviction for possession of codeine and vacate the sentence for that conviction. Defendant's conviction and sentence for possession with intent to distribute hydrocodone are affirmed. The Defendant's conviction and sentence for obstruction of justice are affirmed. The Defendant's conviction for possession of marijuana in an amount greater than sixty pounds but less than two thousand pounds is reversed, and the sentence for that conviction is vacated. The Defendant's conviction and sentence for conspiracy to distribute marijuana are affirmed.

**AFFIRMED IN PART; REVERSED IN PART.**